UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
U2 HOME ENTERTAINMENT, INC.,            :
                                        :
                                        :
                      Plaintiff,        :
                                        :
                                        :
        -against-                       :
                                        :
                                        :
                                        :   02 Civ. 5828(JFK)
                                        :
                                        :   FINDINGS OF FACT
                                        :        and
HONG WEI INTERNATIONAL TRADING, INC.    :   CONCLUSIONS OF LAW
and JIXONG NI d/b/a HONG WEI, INC.      :
                                        :
                                        :
                      Defendants.       :
                                        :
----------------------------------------X

APPEARANCES:

For Plaintiff:
     SARGOY, STEIN, ROSEN & SHAPIRO
     1790 Broadway
     New York, New York 10019
     Of Counsel: Harvey Shapiro, Esq.
                 Walter Michael Lee, Esq.

For Defendants:
     WU & KAO, P.L.L.C.
     747 Third Avenue, 22nd Floor
     New York, New York 10017
     Of Counsel: Harold W. Suckenik, Esq.


**JOHN F. KEENAN, United States District Judge**

**JOHN F. KEENAN, United States District Judge:**

This matter returns to the Court on Plaintiff's motion to hold Defendants in contempt of a permanent injunction issued on December 30, 2003. Pursuant to Local Civil Rule 89.3(b) of the Local Rules of the Southern and Eastern Districts of New York, a hearing on this matter was held on December 7, 14 and 16, 2004, and January 24, 2005. The Court heard the testimony of witnesses and the arguments of counsel. For the reasons that follow, the Court finds Defendants in contempt of the permanent injunction, but reserves the fixing of sanctions until the completion of supplemental briefing.

## BACKGROUND

On July 24, 2002, Plaintiff brought this action alleging that Defendants were distributing unauthorized video compact discs ("VCDs") of copyrighted television programs ("TVB Programs") and other motion pictures. A non-jury trial was held on October 20, 2003, during which the defense admitted that they had duplicated VCDs of the TVB Programs. After trial, the parties reached a settlement. The settlement provided, _inter alia_, that Defendants would pay to Plaintiff $50,000, consent to the entry of a permanent injunction and enter into a "Sublicense Agreement" for the distribution of TVB Programs. Under the settlement agreement, counsel for the parties presented a

proposed "Permanent Injunction and Final Judgment Pursuant to Stipulation" to the Court.

On December 30, 2003, the Court signed the proposed injunction and judgment. At Paragraph 1(b), the injunction prohibited Hong Wei from:

> Importing, manufacturing, copying, duplicating or knowingly selling, renting, distributing, performing, or otherwise disposing of any unauthorized videocassette or videodisc copies of the Subject Motion Pictures.

The injunction also provided at Paragraph 6:

> The Court shall retain jurisdiction of the within action to entertain such further proceedings and to enter such further orders as may be necessary or appropriate to implement and/or enforce the provisions of the judgment.

(Pl. Exh. 13).

Plaintiff has moved that Defendants Hong Wei International Trading, Inc., and Jixong Ni (collectively, "Hong Wei") be held in contempt of court for violating this Court's Permanent Injunction. The Court has heard the testimony of witnesses, and arguments of counsel, and now makes the following findings of fact and conclusions of law on this motion.

## FINDINGS OF FACT

### A.  The Parties and the October 2003 Trial

Plaintiff U2 Home Entertainment, Inc. ("U2"), is a California corporation with its principal place of business in South San Francisco, California. U2 does business under the name

Tai Seng Entertainment ("Tai Seng").  Plaintiff has the exclusive

authority from TVB Holdings (USA) Inc. to duplicate and

distribute throughout the United States, including New York

State, television programs produced in Hong Kong, which are known

as TVB Programs.  These programs are protected under the

copyright laws of the United States.  U2 is the owner of

exclusive distribution rights to the TVB Programs, which are

distributed by TVB (Overseas) Limited. (Tr. at 9-10, 19-20, 22).[1]

Defendants are Hong Wei International Trading, Inc., a

New York Corporation, and Jixong Ni, an individual.  They operate

a video retail store at 32 East Broadway, New York, New York.[2]

Hong Wei is in the business of distributing videocassettes and

videodiscs of motion pictures and television programs to the

Chinese community.  At the trial, Defendants were represented by

Chris Lin, a Chinese-speaking attorney who practices in the

intellectual property area.  Mr. Lin also represented Hong Wei in

connection with the settlement and the injunction in the case.

(Tr. at 99).  Mr. Ni consulted with Mr. Lin before he signed the

Settlement Agreement.  Mr. Ni signed this agreement in Mr. Lin's

office. (Tr. at 99-100).  Mr. Ni knew that the Settlement

---

[1] "Tr." refers to the transcript page of the Contempt
hearing, held on December 7, 14 and 16, 2004.

[2] Joint Pretrial Order, Aug. 4, 2003 (Stipulated Fact #4).

Agreement ended the lawsuit and that he had obligations under the agreement. (Tr. at 80-81).

B.  **The Sublicensing Agreement and TVB Programs**

After the settlement and issuance of the Permanent Injunction, the parties entered into a "Non-Exclusive Sublicense Agreement (the "TVB Sublicense"). By its terms, Hong Wei was authorized to distribute from December 1, 2003 through November 30, 2004 digital versatile discs ("DVDs") of the TVB Programs. The license fee payable was $100,000. The TVB Sublicense was limited to the 32 East Broadway location.

Under the TVB Sublicense, U2 was to provide Hong Wei at least 14,800 DVDs of each TVB Program release. (Pl. Exh. 14, Sch. A ¶ 3(b); Tr. at 15). The TVB Sublicense gave Defendants the right to rent TVB Programs. Defendants covenanted that they would "not sell any TVB Videograms supplied." (Pl Exh. 14, §§ 1.05, 5.01(b)) (emphasis added). If Hong Wei needed additional DVD copies of the TVB Programs, it could purchase copies from Plaintiff for $6.76 per DVD (Tr. at 16, 24). The DVDs provided to Hong Wei under the TVB Sublicense included episodes of the following programs: Dream of Colors, Golden Faith, The Duke of Mount Deer, A Handful of Love, Hidden Treasures, To Get Unstuck in Time, Triumph in the Skies, and Twin of Brothers (the "Subject TVB Programs").

5

At the Contempt hearing, the copyright certificates or applications (the chain of title documents) for the Subject TVB Programs were received in evidence as Plaintiff's Exhibit 16. (Tr. at 22). The ownership of these rights was stipulated by counsel before the October 2003 trial.[3] Plaintiff is the owner of exclusive rights with respect to the Subject TVB Programs. For these programs, the United States Copyright Office has issued certificates of copyright registration, or applications therefor have been filed. (Tr. at 40-41).

## C. <u>Mr. Ni's Understanding of the Injunction</u>

As for the Court's Order of Permanent Injunction, Mr. Ni testified as to his understanding of its clear language, which forbade him from dealing in unauthorized copies of the Subject TVB Programs:

> THE COURT: Did the fact that you did not sell any of the discs in the piles in front of you, Exhibit 20, did the fact that you did not sell them have anything to do with any agreement or arrangement you had with U2 or Tai Seng?
>
> THE WITNESS: Yes
>
> . . .
>
> THE COURT: So you knew you couldn't sell them.
>
> THE WITNESS: That's right.
>
> THE COURT: And was that because of the injunction that you knew you couldn't sell them?

---

[3] Joint Pre-Trial Order, Aug. 4, 2003 (Stipulated Fact #2).

THE WITNESS: TVB only for rent. It's not for sale.

THE COURT: And is the reason they were only for rent and not for sale because of the injunction and because of the agreement that you had with Tai Seng, which is also U2, as I understand it?

THE WITNESS: That's right.

(Tr. at 80-81). Mr. Ni's testimony shows that he was well aware of the obligations imposed on him by the permanent injunction that was part of the settlement agreement.

The testimony of Mr. Ni's attorney, Mr. Chris Lin, supports this finding. Mr. Lin testified that his usual practice would be to go over the terms of the settlement "paragraph by paragraph and clause by clause." (Tr. at 234). Mr. Lin recalled no departure from his usual practice in the case of Mr. Ni. (Id.). In fact, Mr. Lin testified that Mr. Ni asked several questions th1at reflected an understanding of the settlement agreement and permanent injunction. (Tr. at 234-35).

Mr. Lin's testimony contradicts Mr. Ni's prior testimony that no one had ever explained to him the "piece of paper" that ended the case: i.e., the settlement agreement. (Tr. at 55-56). Even Mr. Ni admitted, however, that he understood "that that piece of paper ended the prior case" and that he "had to perform some duties under that agreement." (Tr. at 56).

D.   **The Infringement Allegedly Continues**

Plaintiff did not provide Hong Wei any VCD copies of the TVB Programs provided under the TVB Sublicense.  As U2's general counsel Alan Huie testified, there are no authorized VCD copies of recent TVB Programs. (Tr. at 29).  On April 13, 2004, Mr. Huie sent a letter by certified mail, return receipt requested, and by fax, to Mr. Ni demanding that Hong Wei cease and desist from distributing unauthorized VCDs of the TVB Programs. (Exh. 18; Tr. at 25-26).  Mr. Ni testified that he never saw this letter before he was shown it at the hearing. (Tr. at 104-05).  U2's sales manager, Cindy Ng, rebutted this tesimony.  She testified that she discussed this letter with Mr. Ni, and that he said he would comply. (Tr. at 182).  The Court accepts Ms. Ng's testimony, rejects Mr. Ni's, and makes the finding that Mr. Ni was lying.

On July 10, 2004, Nai Saecho accompanied a confidential informant into Mr. Ni's Hong Wei store at 32 East Broadway.  This informant was Wai Hing Dye, the mother of Perry Yuen, who was Ms. Saecho's employer. (Tr. at 159, 225).  Despite the injunction and Sublicensing Agreement, Ms. Dye purchased 91 VCDs for $45.50 cash. (Tr. 157-58, 162).  After the purchase, Ms. Saecho gave the discs to Mr. Yuen, who was waiting outside the store. (Tr. at 158).  Mr. Yuen later provided the discs to Mr. Huie. (Tr. at

29). These discs were admitted at the Contempt hearing as Plaintiff's Exhibit 19.[4]

On August 14, 2004, there was a repeat performance at the Hong Wei store, albeit with a different troupe of actors. On that day, Ms. Sharrie Lao went into the Hong Wei store while Mr. Huie waited outside. (Tr. at 165). Ms. Lao testified that she purchased VCDs of the TVB programs To Get Unstuck in Time, Hidden Treasures, A Handful of Love and Twin of Brothers. (Tr. at 166-67, 169). She paid an unspecified amount of cash, without a deposit, and was refused a receipt even though she requested one. (Tr. at 167, 169). When Ms. Lao asked for an explanation, the store attendant told her that "they [Hong Wei] sell a lot of discs every day, the quality should be very good, there won't be any defective discs." (Tr. at 170). The 95 discs purchased on August 14 were admitted into evidence as Plaintiff's Exhibit 20.

There is no dispute that the VCDs came from the Hong Wei store. (Tr. at 87-88). Each of the VCDs marked as Exhibits 19 had inventory numbers from the Hong Wei store. (Tr. at 85-87). Mr. Huie testified that U2 releases only DVDs of new TVB

_____

[4] Upon reviewing the record, the Court determines that there may be some ambiguity as to whether Plaintiff's Exhibit 19 actually was received into evidence. (See Tr. at 33-35, 43, 87). After initially sustaining Defendants' objection on hearsay grounds during Mr. Huie's direct testimony, the Court certainly intended to admit Exhibit 19 during Ms. Lao's rebuttal testimony. It is notable that both parties assumed that Exhibit 19 had been admitted during this time. (Tr. at 180, 192). If any confusion exists, the Court clears it up now: Exhibit 19 is received.

titles (Tr. at 29-31).  He further testified that <u>Golden Faith</u> and <u>Color of Truth</u> are new TVB titles and are not available legitimately in the United States in VCD format. (Tr. at 32). Mr. Huie further testified that discs of the programs <u>Triumph in the Skies</u> and <u>The Duke of Mt. Deer</u> were also unauthorized copies, judging from the appearance of the discs. (Tr. at 32-33).

The same is true for Exhibit 20.  These VCDs also had Hong Wei inventory numbers (Tr. at 85-87).  Mr. Huie testified that the <u>Handful of Love</u>, <u>Hidden Treasures</u>, <u>To Get Unstuck in Time</u> and <u>Twin of Brothers</u> VCDs were unauthorized copies because these programs were recent releases and therefore not available legitimately on VCD.  Mr. Huie further testified that these VCDs, like those in Exhibit 19, were merely plain silver discs with handwriting -- in other words, obviously unauthorized copies of the TVB programs.  (Tr. at 38-40).

## E.   <u>Mr. Ni's Shifting Explanations for the Infringement</u>

Mr. Ni posited no less than five different explanations for the source of these questionable discs: (1) they were purchased from Plaintiff (Tr. at 88); (2) they were purchased from video stores in New York, including nearby Dong Fang (Tr. at 72, 96, 97, 141); (3) they were purchased from China (Tr. at 128-29); (4) they were purchased from California (Tr. at 94); and (5) they were rented from Dong Fang (Tr. at 98).  Ultimately, it does

not matter which of these stories (if any) are true.[5]  The VCDs were illegal copies of TVB programs.  Mr. Ni knows that the duplication of copyrighted videos is illegal. (Tr. at 103).  Despite this knowledge, Mr. Ni duplicated the videos himself or obtained copies from someone else.  Either way, Hong Wei could not rent <u>or</u> sell these VCDs without infringing Plaintiff's copyright and violating the injunction.

Mr. Ni testified that the VCDs were not for sale, but only for rent. (Tr. 79-81).  This testimony contradicts Mr. Ni's prior testimony that he <u>had</u> sold VCDs. (Tr. at 60, 71-72).  Assuming for the moment that the discs were for sale, Mr. Ni justified the sale by claiming that "Cindy [Ng] told me that I could sell them." (Tr. at 60).  Ms. Ng rebutted this testimony when she testified as to her conversation with Mr. Ni about Mr. Huie's warning letter: "I discussed with him that the warning letter was about how he could not sell discs of our new TVB programs." (Tr. at 182).[6]  This conversation took place over the

_____

[5] It should be noted that Ting Li, the Dong Fang co-owner, convincingly testified that none of the discs in Exhibits 19 or 20 came from her store, and that Dong Fang never sold or rented VCDs to Hong Wei. (Tr. at 218).

[6] As stated, Mr. Ni testified that he never received Mr. Huie's letter. (Tr. at 105).  The Court noted that the Hong Wei address on the Certified Mail Receipt and Return Receipt slip was 232 East Broadway, with the first "2" crossed out or blurred. (Tr. at 107).  Hong Wei's address is 32 East Broadway.  While the slips do not provide clear and convincing evidence that Mr. Ni received the letter, Ms. Ng's testimony overcomes this problem.

telephone after issuance of the letter. (Tr. at 182-83). The Court therefore rejects Mr. Ni's contention that Plaintiff authorized him to sell the VCDs.

Mr. Ni's alternate explanation is that the VCDs were solely for rent because he was aware that new TVB titles could not be sold. (Tr. at 80). This story flies in the face of Mr. Ni's former testimony and the overwhelming weight of evidence. Nevertheless, the Court gave Mr. Ni the opportunity to produce rental records concerning three Hidden Treasures discs in Exhibit 20. (Tr. at 89-92). This was Mr. Ni's chance to rebut the previous testimony of Mr. Huie, who testified that the discs had been purchased on August 14, 2004. Not surprisingly, Mr. Ni was unable to produce the records as the Court requested.

## F.   **The U.S. Chinese Video Association**

It is worth noting that Mr. Ni is the president of the U.S. Chinese Video Association. He was elected to this post by other video retail store owners. This organization hires attorneys to educate members stores concerning the United States copyright laws. One of the lawyers for this organization is Alan Wu of Wu & Kao, counsel for Hong Wei. (Tr. 150-53).

### CONCLUSIONS OF LAW

## A.   **Jurisdiction**

Defendants challenge this Court's jurisdiction to entertain Plaintiff's contempt motion. The December 30, 2003

Injunction provides that "[t]he Court shall retain jurisdiction of the within action to entertain such further proceedings and to enter such further orders as may be necessary or appropriate to implement and/or enforce the provisions of the judgment." (Pl. Exh. 13, ¶ 6). Defendants object that the Injunction does <u>not</u> say that the Court has the power to entertain a contempt motion in particular. (Jan. 24, 2005 Hrg., Tr. at 17). Defendants cite <u>AccuSoft Corp. v. Palo</u>, 237 F.3d 31 (1st Cir. 2001) in support of their argument. (Def. Prop. Findings of Fact at 6). The Court rejects Defendants' argument. The Injunction is clear and there is no reason for anyone to believe that Paragraph 6 does not encompass contempt motions. The <u>AccuSoft</u> case has no application to the facts of this case, and Defendants have given the Court no explanation for citing it.

**B.    <u>Rule 52(a) of the Federal Rules of Civil Procedure</u>**

Defendants contend that Plaintiff may not move for contempt of the December 30, 2003 Permanent Injunction because the injunction contained no findings of facts or conclusions of law pursuant to Fed. R. Civ. P. 52(a). (Jan. 24, 2005 Hrg., Tr. at 19). Defendants cite <u>Universal City Studios, Inc. v. Nintendo Co., Ltd.</u>, 578 F. Supp. 911 (S.D.N.Y. 1983) in support of this proposition. <u>Universal</u> involved a collateral estoppel issue on a summary judgment motion. The case had nothing to do with a contempt hearing. The Court has the power to enforce settlement

agreements, and the Injunction merely sets forth the terms
contemplated in the settlement agreement. (Pl. Exh. 12, ¶ 4).
Rule 52 is inapplicable in this context.  See Bowater N. Am.
Corp. v. Murray Machinery, Inc., 773 F.2d 71, 77 (6th Cir. 1985).

## C.   **Civil Contempt: Analysis**

The Court has the power to impose fines, imprisonment,
or both, for the disobedience of its lawful orders.  18 U.S.C. §
401(3).  In order to establish civil contempt of a court order,
the movant must establish that "(1) the order the contemnor
failed to comply with is clear and unambiguous, (2) the proof of
noncompliance is clear and convincing, and (3) the contemnor has
not diligently attempted to comply in a reasonable manner."
Perez v. Danbury Hosp., 347 F.3d 419, 424-25 (2d Cir. 2003)
(internal quotation marks omitted).

The first issue is whether the Court's Injunction and
Judgment of December 30, 2003 was clear and unambiguous.  A clear
and unambiguous order is "specific and definite enough to apprise
those within its scope of the conduct that is being proscribed."
N.Y. State Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1352 (2d
Cir. 1989).  Where, as here, an injunction is involved, "the
party enjoined must be able to ascertain from the four corners of
the order precisely what acts are forbidden."  Drywall Tapers &
Pointers of Greater N.Y. v. Local 530 of Operative Plasterers,
889 F.2d 389, 395 (2d Cir. 1989).

The Court concludes that the injunction was clear and unambiguous. The language could not be more transparent. In relevant part, Defendants were enjoined from "duplicating or knowingly selling [or] renting . . . any unauthorized . . . videodisc copies of the Subject [TVB] Motion Pictures." (¶ 1(b)). The testimony of Mr. Lin, and of Mr. Ni himself, provide clear and convincing evidence that Mr. Ni understood the terms of the injunction and their implications (see supra, pp. 6-7).

The next issue is whether Mr Ni's noncompliance with the permanent injunction is clear and convincing. Based on the evidence adduced at the contempt hearing, the Court concludes that Plaintiff has not only established clear and convincing noncompliance, but noncompliance beyond any doubt. The evidence establishes that Defendants were permitted under the Sublicense to rent DVDs of the new TVB programs. Plaintiff, the copyright holder, did not issue VCDs of these programs.[7] Defendants infringed Plaintiff's copyright by selling unauthorized VCDs of new TVB programs. Despite his constantly shifting story, Mr. Ni conceded on direct examination that he had sold the VCDs. (See supra, p. 11). Even if he rented these VCDs (a truly absurd proposition unsupported by any evidence), Mr. Ni infringed the

---

[7] Despite Defendants' protestations, there is no question that Plaintiff is the legitimate copyright owner of the Subject TVB Programs because this fact was stipulated in the Parties' Joint Pre-Trial Order of August 2003. (See supra, p. 6).

copyright anyway because the VCDs were obviously unauthorized, as Mr. Huie testified. (See supra, pp. 8-10).

To summarize, there is clear and convincing evidence that the discs in Exhibits 19 and 20 were unauthorized copies of the TVB programs, and that Hong Wei sold these discs to Ms. Saecho and Ms. Lao on July 10, 2003 and August 14, 2003, respectively. These sales violated the settlement agreement, permanent injunction and Sublicensing Agreement. Plaintiff therefore has established the second prong of their burden.

The final issue is whether Defendants were diligent in their attempt to comply with the permanent injunction. The Court finds that Defendants were not. On two occasions during the summer of 2004, Hong Wei sold unauthorized VCDs to Plaintiff's agents. When called to account at the contempt hearing, Mr. Ni regaled the Court with a display of untruthfulness that would have astounded Pinocchio.[8] Mr. Ni's conduct shows a complete disdain for the permanent injunction and the oath he swore before he took the stand. This conduct is all the more egregious because of Mr. Ni's status as president of the U.S. Chinese Video Association. There is no question that Mr. Ni was not diligent in complying with the Court's order.

_____

[8] The Court even thought it necessary during the first day of the hearing to remind Mr. Ni's counsel of his obligation to inform his client of the requirement that witnesses in American courts tell the truth. (Tr. at 106-08).

In conclusion, the Court finds that Plaintiff has established all three criteria for civil contempt by clear and convincing evidence. Accordingly, the Court holds the Defendants in contempt of the Order of Permanent Injunction.

**D.** **Appropriate Sanctions**

Now that it has been determined that Defendants are in civil contempt of Court, appropriate sanctions must be devised. The Court has broad discretion to fashion sanctions to coerce compliance with its orders and compensate Plaintiff for Defendants' noncompliance. See N.A. Sales Co. v. Chapman Indus. Corp., 736 F.2d 854, 857 (2d Cir. 1984). Plaintiff seeks damages under the Copyright Act, which provides:

> [E]xcept as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which two or more infringers are liable jointly and severally, in a sum not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c). Plaintiff requests $1000 per disc in evidence (Exhibits 19 and 20), for a total sanction of $186,000. Plaintiff is playing in the wrong ballpark. It is punitive in nature to increase Section 504(c) damages because of a willful infringement. See Davis v. The Gap, Inc., 246 F.3d 152, 172 (2d Cir. 2001). The point of contempt sanctions, by contrast, is "to coerce the defendant into compliance with the court's order, and

17

to compensate the complainant for losses sustained." <u>United States v. Mine Workers of America</u>, 303 U.S. 258, 303-04 (1947). Punishment is not the goal.  The Court therefore rejects Plaintiff's invitation to apply an enhanced measure of damages under Section 504(c).  <u>See</u> <u>Dula v. Amereon, Ltd.</u>, 2004 WL 1586410 at *2 (S.D.N.Y. 2004) (Casey, J.); <u>Yurman Design Inc. v. Chaindom Enters., Inc.</u>, 2003 WL 22047843, at *3 n.2 (S.D.N.Y. 2003).

The Court is inclined to impose a sanction that results in a compensatory fine, but in such cases proof of loss must be present, and "the sanction should correspond at least to some degree with the amount of damages." <u>Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.</u>, 369 F.3d 645, 658 (2d Cir. 2004).  Unfortunately, none of Plaintiff's submissions on this contempt motion shows any evidence of actual loss.  The Second Circuit has held that a compensatory sanction is "not always dependent on a demonstration of actual pecuniary loss," and "under a theory of unjust enrichment, a contempt plaintiff is entitled to defendant's profits without submitting direct proof of injury." <u>Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.</u>, 885 F.2d 1, 5-6 (2d Cir. 1989); <u>see</u> <u>also</u> <u>Rick v. Buchansky</u>, 2001 WL 936293 at *6 (S.D.N.Y. 2001) (Ward, J.) ("Where actual pecuniary loss is difficult to prove, compensatory relief may include profits derived by the contemnor from the violation of a court order.").  Profits mean "net profits," and

the contemnor bears the burden of proving "any deductions for its costs from the gross revenues attributable to its contempt." Manhattan Indus., 885 F.2d at 7.

The evidence is clear that Ms. Saecho paid $45.50 for the 91 discs in Exhibit 19. Incredibly, there was no evidence at the hearings concerning how much Ms. Lao paid for the 95 discs in Exhibit 20. Plaintiff's papers do not address the point either. There is evidence, however, that if Defendants wanted additional copies of TVB Programs, they could have purchased DVDs from Plaintiff at $6.76 per disc. (Tr. at 16, 24). In the Court's view, each of the 186 unauthorized VCDs in Exhibits 19 and 20 represents one DVD that should have been purchased legitimately from Plaintiff for $6.76 each. On Defendants' side, no showing has been made concerning costs or expenses associated with the profits resulting from the illegal activities. Both sides shall make additional submissions on these subjects. Plaintiff shall submit papers concerning the price paid for the Exhibit 20 discs. Defendants shall submit papers detailing their costs and expenses, if any. If such submissions are not made in accordance with the deadlines in pp. 21-22 of this Order, the Court will issue a compensatory sanction of $45.50 plus $6.76 for each disc, for a total of $1302.86.

The Court now turns to the other purpose of sanctions: coercing compliance with its Orders. Coercive fines may not be

punitive in nature.  See N.Y. State Nat'l Org. for Women v.
Terry, 159 F.3d 86, 93-94 (2d Cir. 1998).  Plaintiff justifies
its request for $186,000 by contending, in part, that Hong Wei's
payment of $50,000 for settlement of the 2003 action and $100,000
for the Sublicense fee, along with the $100,000 liquidated
damages provision in the Sublicensing Agreement, were
insufficient to deter Hong Wei from infringing Plaintiff's
copyrights. (Pl. Prop. Findings of Fact at 19).  Plaintiff
implies that the $186,000 award will force Defendants into
compliance.  The Court rejects this reasoning and the number.  A
flat fine without a purge provision is punitive because it does
not allow Defendants to avoid the fine through future compliance.
Dula, 2004 WL 1586410, at *3; see Terry, 159 F.3d at 93-94.

        The Court therefore will calculate the fine, but only
after supplemental briefing.  The following factors will be
relevant to this calculation: "[1] the character and magnitude of
the harm threatened by continued contumacy, [2] the probable
effectiveness of any suggested sanction in bringing about
[compliance], and [3] the contemnor's ability to pay."
Paramedics Electromedicina, 369 F.3d at 657-58; Dole Fresh Fruit
Co. v. United Banana Co., 821 F.2d 106, 110 (2d Cir. 1987)
(vacating contempt order because, inter alia, district court
failed to consider the three factors before fashioning coercive
remedy).  At present, the Court has scant information concerning

these factors, particularly #3. The parties will address these factors in their supplemental briefs.

Finally, Plaintiff requests reasonable costs and attorneys' fees under 17 U.S.C. § 505. While the Court refuses to rely on the Copyright Act in the contempt context (<u>supra</u>, pp. 17-18), Local Civil Rule 83.9(a) provides that "[a] reasonable counsel fee, necessitated by the contempt proceedings, may be included as an item of damage." To date, however, Plaintiff has provided the Court with no documentation supporting its demand for fees. At the very least, the Court requires billing statements sent to the Plaintiff, with redactions as appropriate. These statements, and any other documentation germane to the issue of attorneys' fees, must be submitted to the Court with Plaintiff's supplemental brief. Costs and disbursements will not be awarded. The attorneys' fees suffice to deter Defendants from future violations of the Court's Orders. <u>See</u> <u>Yurman Design</u>, 2003 WL 22047843, at *3.

## CONCLUSION

(1) The Court finds Defendants-Contemnors Hong Wei International Trading Inc. and Jixong Ni in contempt of the Permanent Injunction dated December 20, 2003.

(2) No later than June 17, 2005, Plaintiff shall file and serve supplemental papers concerning the price paid by Ms.

Lao for the Exhibit 20 discs.  Defendants-Contemnors may respond to this filing by July 8, 2005.

(3) No later than June 17, 2005, Defendants-Contemnors shall file and serve supplemental papers concerning the costs and expenses attributable to their sale of the discs in Exhibits 19 and 20.  Plaintiff may respond to this filing by July 8, 2005.

(4) The parties may conduct discovery on the three coercive sanction factors quoted from <u>Paramedics Electromedicina</u> (<u>supra</u>, p. 20).  Discovery shall be completed by June 3, 2005. No later than June 17, 2005, Plaintiff may file and serve supplemental papers to a maximum of ten pages proposing a coercive sanction and justifying the amount.  Defendants-Contemnors shall submit a response under the same guidelines by July 1, 2005.  Plaintiff may file a five-page reply no later than July 8, 2005.

(5) No later than June 17, 2005, Plaintiff shall submit to the Court supplemental papers proposing reasonable attorneys' fees and justifying the amount.  Defendants-Contemnors shall submit a response by July 8, 2005.

**SO ORDERED.**

Dated: New York, New York
      May 3, 2005

**JOHN F. KEENAN**
**United States District Judge**

22